UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
BRIAN NG

                 Plaintiffs,

        -against-                        **Case: 1:25-cv-00806**

AmGUARD INSURANCE COMPANY;
NORTH AMERICAN RISK SERVICES, INC;
EBERL CLAIMS SERVICES LLC.

                 Defendants.
------------------------------------------------------------------------x

RECEIVED PRO SE OFFICE 2025 OCT -3 PM 2:33

## SECOND AMENDED VERIFIED COMPLAINT
## DEMAND FOR JURY TRIAL

      This amended verified complaint has been filed under the permission of this Court, as directed on September 12, 2025. It supersedes the original complaint and any other amended complaint previously filed, in its entirety.

      Brian Ng, ("plaintiff, pro se") respectfully alleges upon information and belief, except for allegation pertaining to plaintiff, which are based on personal knowledge, facts, and in support of this verified amended complaint.

      Plaintiff, pro se, by and through himself, now brings claims by this action for (1) Tortious interference with contractual and business relations, (2) Fraudulent misrepresentation, and (3) Negligent hiring, retention, and supervision, and for damages against the defendants AmGuard Insurance Company, ("AmGUARD") North American Risk Services, Inc.,("NARS") and Eberl Claims Services, LLC, ("EBERL") and for his complaint, alleges as follows:

1

## NATURE OF THE ACTION/PRELIMINARY STATEMENT

1.     This is an action for catastrophic damages resulting from
Defendants fraudulent and tortious scheme that destroyed Plaintiff's valuable business relationship
with his business partner and principal, Mr. Matthew Ng. Defendant EBERL, acting in concert
with NARS and AmGUARD, willfully dispatched, permitted and allowed a legally prohibited and
unqualified individual named Bradley Grossman, to impersonate a legitimate claims adjuster.

2.     Through a series of calculated misrepresentations made
Directly to Plaintiff, the Defendants by their adjuster (Bradley Grossman) induced Plaintiff's
reliance, placed plaintiff in a compromised fiduciary position, and ultimately shattered the trust
that was the bedrock of Plaintiff's business partnership with Mr. Matthew Ng. As a direct result
of Defendants malicious conduct, specific, multi-million dollar real estate ventures between
plaintiff and Mr. Matthew Ng were terminated, causing Plaintiff immense financial and
reputational harm.

3.     This is an action for damages arising from a deliberate and
Fraudulent scheme perpetrated by the Defendants. Defendant EBERL, by its adjuster named
(Bradley Grossman), acting as an agent for the Defendant AmGuard insurance company, falsely
impersonated an official insurance company claims adjuster to induce Plaintiff's reliance.

4.     As a direct and proximate result of Defendants fraudulent
misrepresentations and wrongful conduct, Plaintiff was induced to take actions and provide advice
that ultimately destroyed the fiduciary relationship with his business partner, leading to the
collapse of a lucrative real estate development venture and causing Plaintiff significant financial
and personal damages.

2

## PARTIES

5.       Plaintiff Brian Ng, is an individual and a citizen of the State of New York State. He owned a reasonable amounts of acres of land/properties in the Caribbean, and has a strong positive interests in real estate investing and developing, and was, at all relevant times, a business partner of Matthew Ng and his designated agent/representative under a power a Power of Attorney.

6.       Upon information and belief, defendant AmGuard Insurance Company, hereinafter, referred to as ("Defendant AmGuard") was, and still is, a stock insurance company duly authorized to conduct business within the State of New York, and in the business of selling homeowners insurance coverage.

7.       Upon information and belief, at all times hereinafter mentioned, Defendant AmGuard was, and still is, a stock insurance company, a corporation duly organized and existing under the Laws of the State of Pennsylvania. Upon information and belief, Defendant AmGuard is domicile in Nebraska, and Defendant AmGuard is a citizen of Nebraska.

8.       Upon information and belief, at all times hereinafter mentioned, Defendant AmGuard was, and still is, a stock insurance company, with its principal place of business located at 39 Public Square, Wilkes-Barre, Pennsylvania 18703.

9.       Upon information and belief, at all times hereinafter mentioned, Defendant AmGuard was, and still is, domicile in Nebraska, and licensed to transact business in all U.S. States and the District of Columbia. Defendant AmGuard's NAICS Company code is: #42390.

10.      Upon information and belief, defendant North American Risk Services, Inc., hereinafter referred to as ("Defendant NARS") is a corporation duly organized and existing under the Laws of the State of Delaware. Defendant NARS is domicile in Delaware and is a citizen of Delaware, and it has been incorporated in the State of Delaware.

11. Upon information and belief, Defendant NARS principal place of business is located at 300 International Parkway, Suite 250, Lake Mary, Florida 32746.

12. Upon information and belief, Defendant NARS is an authorized foreign corporation in New York under Business Corporation Law Sections 1301, *et seq*.

13. Upon information and belief, at all times hereinafter mentioned, Defendant NARS was, and still is, licensed as an Independent Adjuster with a licenses number: 1096779 issued to operate and do business in New York, and was, and still is, the third party administrator for defendant AmGuard Insurance Company.

14. Upon information and belief, EBERL Claims Services, LLC, hereinafter referred to as ("Defendant EBERL") is a Limited Liability Company, organized, formed and/or registered on 05/04/2015 and existing under the Law of the State of Colorado, and is a citizen of Colorado.

15. Upon information and belief, defendant EBERL Claims Services, LLC, is a single-member LLC owned by Cor Partners, Inc., a parent company serving the insurance, risk management, and legal communities.

16. Upon information and belief, Cor Partners, Inc., is a foreign profit corporation duly formed, organized and existing under the Laws of the State of Missouri. Cor Partners, Inc., is domicile in Missouri and is a citizen of Missouri, it has been incorporated in Missouri and is completely diverse from opposing parties. Cor Partners Inc. primary address is 5565 Glenridge Connector, Suite 900, Atlanta Georgia 30342.

17. Upon information and belief, at all times hereinafter mentioned, EBERL was, and still is, licensed as an Independent Adjuster with a license number: 1416444 issued to operate and/or do business in New York.

18.     Upon information and belief, EBERL is an authorized foreign LLC in New York under Article 8 of the limited Liability Company Law.

19.     Upon information and belief, EBERL's principal place of business is located at 3900 S. Wadsworth Blvd, Suite 800, Lakewood, Colorado 80235.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 (Diversity Jurisdiction), as the plaintiff and the defendants are citizens of different states, and the amounts in controversy exceeds $75,000, exclusive of interests and costs.

21.     This Court has personal jurisdiction over all the defendants because at all times relevant hereto, the defendants has engaged in substantial business activities in New York State. At all relevant times hereto, all the defendants transacted, solicited, and conducted business in New York State through its employees, agent, and/or sales representatives

and contracted to investigate claims and handle claims, and derived substantial revenue from such business in New York State.

22.     Venue is proper in this Judicial District pursuant to 28 U.S.C. §1391(a) because a substantial portion of the events, wrongful acts, and omission, including the fraudulent inspection and the misrepresentations  made to Plaintiff, and giving rise to the claims and upon which the lawsuit is based occurred in this district. Venue is also proper pursuant to 28 U.S.C. §1391(c) because defendants are corporations that has substantial systemic and continuous contact in New York State, as a result, they are subject to personal jurisdiction in this district.

23.     The acts and/or omissions complained of in the within amended verified complaint took place in whole or in part within the venue of this Court.

## FACTUAL ALLEGATIONS

**A.    The Business Partnership and its Dependence
on the Insurance Claim**

24.    Plaintiff and Mr. Matthew Ng have a long-standing business relationship spanning may years.

25.    The success of this business relationship was founded on years of mutual trust and reliance.

26.    This relationship was built on trust and focused on joint real estate development and investment opportunities.

27.    Prior to the events giving rise to this complaint, Plaintiff and Mr. Matthew Ng had developed ideas and well-advanced plans for major joint ventures.

28.    These plans included, but were not limited to: (a) the development of a project on approximately six (6) acres of Plaintiff owned land in the Caribbean, for which Mr. Matthew Ng was to provide or secure financing; and (b) joint investment in a portfolio of Caribbean rental properties.

**B.    The Caribbean Project and The Partnership Agreement**

29.    On January 23, 2021, Plaintiff and Mr. Matthew Ng formalized a business partnership (the "Partnership") for the specific purpose of developing a multi-unit residential property owned by Plaintiff in the Caribbean (the "Project"), which could be used for Airbnb and tourist accommodations, etc.

30.    The partnership was memorialized in a binding letter of intent, executed by both parties, which set forth the material terms of their agreement (the "Agreement").

31.   Pursuant to the Agreement, Mr. Matthew Ng was obligated to make a capital contribution of US$200,000.00 dollars to the project.

**C.    Conditions Affecting the Agreement**

32.   Mr. Matthew Ng's $200,000.00 dollars capital contribution was a condition precedent to securing the next stage of financing for the project.

33.   The Agreement further stipulated, and all parties understood, that Mr. Matthew Ng's obligation to make the $200,000.00 dollars capital contribution was contingent upon the timely and fair settlement of a pending insurance claim with AmGuard Insurance Company (AmGuard), if coverage confirmed.

34.   The pending insurance claim related to significant structural damages at a property owned by Mr. Matthew Ng, located in Woodhaven, New York.

35.   On or around January 15, 2021, the property owned by Mr. Matthew Ng in Woodhaven, New York, was damaged. Mr. Matthew Ng then filed a timely claim dated January 22, 2021, with his insurer, Defendant AmGuard Insurance Company, and thereafter executed a valid Power of Attorney dated January 23, 2021, appointing Plaintiff as his agent/representative and attorney-in-fact with full authority to manage, negotiate and resolve the claim with AmGuard, a testament to the trust he placed in Plaintiff. This created a formal fiduciary duty owed by Plaintiff to Mr. Matthew Ng.

36.   Defendants: AmGuard, NARS and EBERL, in response to the claim, dispatched, permitted and allowed their adjuster, named Bradley Grossman, to inspect and investigate the

7

property. Defendants: AmGuard, NARS and EBERL, held their adjuster (Mr. Bradley Grossman) out to Plaintiff as their authorized, qualified, and legitimate representative.

### D. The Defendants Fraudulent Misrepresentations, The Impersonation, False Assurances and Deceptive Instructions

37.     On January 27, 2021, the Defendants caused their adjuster (Mr. Bradley Grossman) to contact Plaintiff via text messages to Plaintiff telephone number (646.820.9238). The initial texts messages reads in separate part, on quote: ***"Good evening, this is Bradley Grossman your insurance claims adjuster. I am contacting you to set up an appointment for an inspection of your damages. I do have availability tomorrow late morning. Please let me know if that time frame works for you. Thanks.".***

38.     On or about January 30, 2021, Plaintiff met with the Defendants adjuster (Mr. Bradley Grossman) at Mr. Matthew Ng's damaged property. He again falsely represented to Plaintiff that he (Mr. Bradley Grossman) was the AmGuard Insurance Company claims adjuster.

39.     During the time, Plaintiff then immediately provided (Mr. Bradley Grossman) with a copy of the power of attorney document, among the other documents and items, all by means of personal hand delivery, and also explained the nature of the business partnership with Mr. Matthew Ng and further explained the project dependence on the claim settlement among other things during the period of time of his lengthy questionings in that regards. Defendants by their adjuster (Mr. Bradley Grossman) was thus fully aware of Plaintiff's fiduciary role and the prospective business relationship from the outset.

40.     Based on his feigned authority, the Defendants adjuster (Mr. Bradley Grossman) made material promises to Plaintiff, he knowingly and intentionally made a series of material false

statements to Plaintiff during the time of his visit, which was noted and documented carefully and may have also captured on the property surveillance/security camera system during the time.

41.     The Defendants adjuster (Mr. Bradley Grossman) had stated during the time among other things, on quote: *"If coverage is confirmed or afforded, I will go ahead and prepare an estimate"* and further stated, that, *"the insurance company or NARS will provide you with a copy of my report, cost estimate and a copy of a statement of loss."* Mr. Grossman went on to further say, *"don't worry, we will provide you with a copy of everything, no problem."*

42.     The Defendants adjuster (Mr. Bradley Grossman) had informed Plaintiff during the time, among other things, on quote: *"if coverage is afforded, the insurance company will propose a settlement of the claim, so that the violations with respect to the findings by the New York City Department of Buildings can be corrected as soon as possible and as required by law."*

43.     The Defendants adjuster (Mr. Bradley Grossman) had informed Plaintiff during the time, among other things, on quote: *"if there is an estimate from the insured side, the insurance carrier will collaborate and eventually find a estimate that is fair and reasonable."*

44.     The Defendants adjuster (Mr. Bradley Grossman) had informed Plaintiff during the time, among other things, on quote: *"AmGuard Insurance Company will indeed accept the NYC Department of Buildings findings including the violations, if coverage is afforded because the documents from DOB shows the cause and origin of the damages."*

45.     The Defendants adjuster (Mr. Bradley Grossman) went on further to informed and instructed Plaintiff during the time, among other things, that Plaintiff not to hire a separate public adjuster or an attorney, and specifically stating it would *"only slow down the process"* and that he *"personally"* or EBERL would handle everything to ensure everything with respect to the claim move quickly and get resolved with a fair and reasonable settlement soon.

E.    **The Other Significant Events That Followed**
**After Defendants Adjuster (Bradley Grossman)**
**Had Inspected and Investigated The Damaged**
**Property on January 30, 2021**

46.    Defendant NARS sent out an email dated March 10, 2021, to which was signed by Julius Lester, separate part of that email stated on quote: *"My name is Julius Lester and I am the inside claim adjuster handling your claim. My contact information is in the signature of this email. At this time I have requested additional information to complete the report from Mr. Bradley's inspection so I can thoroughly review the policy in conjunction with it. Thank you for your patience and we will make a coverage determination soon."*.

47.    Defendant NARS then later sent out another letter via U.S.P.S. regular mail, also dated March 10, 2021, to which signed by Julius Lester, separate part of that letter stated on quote: *"North American Risk Services received the claim on January 26th, 2021 and it is under investigation. We are in possession of the (IA) Independent Adjusters report and reviewing the policy to make a coverage determination."*

48.    On February 18, 2022, Defendant NARS and/or Defendant AmGuard sent their Structural Engineer from EFI Global to the property and they conducted an inspection.

49.    Defendant NARS have sent out a letter dated on February 25, 2022, signed by Julius Lester. Separate part of that letter stated, on quote: *"North American Risk Services received the claim on January 26th, 2021, and it is under investigation. We are in possession of the (IA) Independent Adjusters report and reviewing the policy to make a coverage determination post the submission of the engineering report from EFI Global. If you have not been contacted by EFI Global please contact the undersigned or Alex Stotis, PE/EFI Global at 516.260.2611"*.

50.     On May 23, 2022, EFI Global have sent out an email to me, signed by their Professional Engineer/Forensic Structural Engineer (Alex Stotis). Separate part of their email, stated on quote: "*A follow up inspection has been requested by North American Risk Services at your property at 88-22 78th street, Woodhaven, New York 11421. The re-inspection is for us to provide an estimate and recommended repairs for the issues with your foundation. For us to conduct our inspection, we will need to get access to the foundation wall from your neighbor's property. Is there any way you would be able to coordinate this or do you have a name and contact at the neighboring property for us to call and schedule?*"

51.     Defendants NARS then sent out a letter to us dated on August 31, 2022, to which signed by Pamela Brown. Separate part of that letter stated as follows, on quote: "*We have received written correspondence from Brian Coke Ng, who appears to be working on your behalf regarding this claim. As the named insured, our obligation is to you, and we are not at liberty to share any information or documents with any outside party unless proper documentation has been received (an attorney representation letter or a properly completed power of attorney document) which confirms your desire to have an individual act on your behalf in all matters regarding this claim.*".

"*Brian Coke Ng has requested certain file materials that is considered proprietary product and we are not able to provide you with a copy of that information. This information is used in the determination of coverage for the loss.*"

"*Brian Coke Ng's correspondence states the delay letter we submitted on August 10, 2022 is incorrect. You have provided pictures and documentation regarding the next-door property. At the time the letter was prepared, we did not have any of the requested items. We did not indicate we have received no information from you, we advised the information we require*

*had not been received, which would be pertinent to the claim investigation. To date, we have not received any repair estimates/invoices you may have from your contractor. Your concerns are acknowledged, but there are strict provisions and procedures that we must follow."*

*"Due to the complexity and circumstances of this loss, no estimate has been prepared at this time. To determine the most effective way to complete the repairs, the engineer will need to inspect the neighboring property. As you are aware, inspection to the neighboring property has not occurred due to communication and corresponding problems. We are working towards a resolution on the claim."*

*"Additionally, Brian Coke Ng's correspondence indicates there has been no collaboration or transparency on how the claim is moving. These allegations are vague and do not provide any specifics. Please feel free to contact me at any time for a status update. Throughout the claim process, we believe you have been provided with regular updates and we have communicated what documents/information is necessary to move forward with your claim. As previously mentioned, certain file materials are considered proprietary products and are not available. Once we are able to inspect the origin of the loss, an estimate will be completed, and we will provide you with a copy of that estimate."*

52. Defendants NARS then sent out a follow-up letter dated on September 8, 2022, which signed by Pamela Brown, also in response to my letter dated August 17, 2022. Separate part of that letter, stated as follows, on quote: *"We have received your correspondence regarding the claim for Matthew Wai Hong Ng. I do understand in the past you have spoken with the prior handling adjuster regarding this loss. However, it is our obligation to protect the insured's interest. Therefore, we are not at liberty to share any information or documents with any outside party unless proper documentation has been received. The proper documentation we would need*

*is an attorney representation letter or a properly completed power of attorney document which confirms Matthew Wai Hong Ng's desire to have an individual act on his behalf in all matters regarding this claim."*

53.    Defendant NARS sent out an email dated on March 20, 2023, to which signed by Kimm Gent. That email stated in separate part, on quote: *"The AmGuard Insurance Company has reviewed coverage for the claim and has confirmed coverage applies to the loss that occurred on January 15th, 2021."*

54.    Defendant NARS sent out an email dated April 17, 2023, signed by Kimm Gent. Separate part reads, on quote: *"The field adjuster (Mr. Bradley) did not write an estimate. He took photos of the site only. This is why we need your permission to have the engineer come over and actually write a repair estimate… or you can provide us with an estimate."*

55.    Defendant NARS sent out an email dated on April 18, 2023, to which signed by Kimm Gent. This email stated in separate part, on quote: *"Attached is a copy of the correspondence we received from the outside adjuster Bradley Grossman which confirms that no estimate was written by Bradley."*

56.    Defendant NARS sent me an email dated on April 20, 2023, signed by Kimm Gent. Separate part reads, on quote: *"Attached is the outside adjuster's narrative which confirms there was no repair estimate written by the outside adjuster Mr. Bradley Grossman."*

57.    On September 28, 2023, Estimating Services of New York, provided me with a repair estimate. The repair estimate reflect an amount totaling $180,116.95.

58.    Following the insurance company's (defendant AmGuard and their underwriting department) letter dated June 6, 2024, which included their mandatory recommendations 2024.1 and 2024.2, the Estimating Services of New York, Inc. provided a revised/updated repair cost

estimates of $236,231.49. Upon information and belief, this revised estimates was also forwarded to NARS and/or AmGuard.

59.    Although Defendants had informed Plaintiff, that: *"if there is an estimate from the insured side, the insurance carrier will collaborate and eventually find a estimate that is fair and reasonable."* Such things also never materialized and Plaintiff have not seen any good faith action(s) then, now or forthcoming that may clearly show "*fair and reasonable*"

60.    Plaintiff has seen Defendant AmGuard's set forth its settlement position which is basically predicated on two irreconcilable engineering reports commissioned by AmGuard's itself. For example:

(a).    **Initial Report (EFI Global, March 11, 2022):** AmGuard's first retained expert, Alex Stotis, P.E., investigated the property and concluded unequivocally that the damage was structural, resulting from "differential settlement" of the foundation wall caused by a neighbor's excavation. Mr. Stotis recommended that a licensed professional engineer be retained to design structural repairs for the foundation wall.

(b).    **Second Report (Murray Engineering, August 15, 2025):** Over three years later, AmGuard's second expert, Andrea Shear, P.E., conducted a purely visual inspection and concluded the opposite—that the extensive damages were merely "cosmetic" and did not require structural repairs. This conclusion was reached without performing any of the basic diagnostic tests required by the standard of professional care, such as installing crack monitors or conducting a level survey to measure for ongoing settlement. Furthermore, the report acknowledges that the foundation wall—the source

of the damage identified in the first report—was concealed and not observed.

(c).    Additionally, neither AmGuard nor NARS retained and send a geotechnical engineer to the property, to investigate the "soil bearing safety" issues or a professional engineer to provide the recommended "underpinning design". So, the question remains, how then can there be any good faith for anything to be fair and reasonable?

**F.    Plaintiff's Reliance and Destruction of the Business Partnership**

61.    In justifiable reliance upon the representations of the Defendants adjusters from Plaintiff's Principal's insurance company, Plaintiff conveyed these assurances to Mr. Matthew Ng, managed his expectations accordingly and refrained from taking other actions, such as hiring a public adjuster, get lawsuit filed within the 2 year policy limitation period, etc.

62.    Subsequently, the defendants failed to honor any of these promises and assurances. No good faith, no fair estimate, and no statement of loss was provided by Eberl, NARS, or AmGuard, and no repairs were made, leaving Mathew Ng's property damaged and placing Plaintiff 'in an untenable position with his Principal and Business Partner.

63.    The failure of Defendants to perform as promised coupled with the realization that Plaintiff had been induced to rely on false information, directly and proximately caused a complete breakdown of trust between Matthew Ng and Plaintiff. As a result, Matthew Ng terminated his business relationship with Plaintiff, withdrew his commitment to finance the Caribbean project development, and cancelled all other planned joint ventures.

64.    As a result of this destroyed relationship, Plaintiff has suffered devastating financial losses and significant harm to his business reputation.

65.    Plaintiff subsequently discovered the shocking truth of Defendants scheme: Official records from the New York State Department of Financial Services ("DFS") confirm that Defendants adjuster (Bradley Grossman) is not a claims adjuster but a "Public Adjuster" legally barred from representing an insurer.

66.    Worse yet, the DFS records confirm Defendants adjuster (Bradley Grossman) sole "Line of Authority" (LOA) is for "Life/Accident & Health Agent-LOA" rendering him completely unqualified and legally unauthorized to investigate and/or adjust a property damage claim for, and on behalf of any insurance company.

67.    Defendants, including EBERL was fully aware of New York Strict licensing laws. In EBERL's own website publications, EBERL explicitly details the necessity of obtaining a "General LOA" to work any claim in NY at any time.". EBERL and all the other Defendants decision to dispatch the illegally designated and unqualified Adjuster was there a knowing and willful act in conscious disregard of the law and the foreseeable harm it would cause.

68.    Relying entirely on Defendants adjuster (Bradley Grossman) fraudulent misrepresentations of his identity and authority, his false promises, instructions and other things, combined with NARS further promise that they "*will make coverage determination soon*", Plaintiff took several actions. Plaintiff followed the Defendants adjuster (Bradley Grossman) instructions, refrained from hiring outside help, and assured Mr. Matthew Ng that the claim was being handled properly and would be resolved soon, so  that the violation(s) with respect to findings by the NYC Department of Buildings can be corrected as soon as possible.

69.     The promised estimate and statement of loss by defendants' adjuster (Bradley Grossman) never materialized. Instead, the claim languished for years due to defendants' inaction, bad faith and deception.

70.     On or about July 23, 2025, defendant AmGuard Insurance Company sent their structural engineer, Ms. Andrea Shear, P.E. from Murray Engineering, to conduct a purely visual inspection of the damaged property, (AmGuard's second expert). Following that inspection, AmGuard extended a settlement offer, which was not reasonable and fair, and therefore was rejected.

71.     By August 2025, the extreme delays and lack of progress caused a crisis of confidence. Mr. Matthew Ng continued to question plaintiff's competence in handling the claim and, by extension, his ability to manage the multimillion dollars project.

72.     As a direct and proximate result of the delays and deception caused by defendants, Mr. Matthew Ng lost faith in plaintiff's ability to act as his fiduciary. On or about September 23, 2025, Mr. Matthew Ng formally terminated the partnership agreement and withdrew his $200,000 capital commitment.

73.     Mr. Matthew Ng withdrawal caused the collapse of the project's financing structure, resulting in the complete failure of the venture and the loss of all of plaintiff's expected profits, as well as loss of his business relationship and partnership.

## COUNT 1 - TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE ECONOMIC ADVANTAGE AND BUSINESS RELATIONSHIP (AGAINST ALL DEFENDANTS)

74.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraph 1 through 73.

75.    A valid fiduciary relationship and business relationship including contractual and prospective economic components existed between plaintiff and Matthew Ng, which offered the certain prospect of significant future economic benefits to plaintiff.

76.    Plaintiff had a valid and prospective business relationship with Matthew Ng, namely the partnership for the project, which offered a probable future economic benefit to plaintiff.

77.    Defendants had knowledge to this prospective relationship, as plaintiff explicitly informed defendants adjuster (Bradley Grossman) of it at our first meeting in January 2021.

78.    Defendants knew of this relationship and intentionally interfered with it through improper and fraudulent means, including the deployment of a fraudulent adjuster agent to make false promises and to give assurances among other things.

79.    Defendants intentionally interfered with this relationship by employing wrongful and fraudulent means, including the material misrepresentations detailed above.

80.    Defendants' conduct was malicious, without justification, and specifically designed to, or was substantially certain to, cause a disruption of the relationship.

81.    There was no justification for defendants' interference. Defendant NARS, by and through its agents/adjusters Pamela Brown and Julius Lester, knew of the existing partnership contract and the prospective economic advantages it represented. Said Defendant, along with Defendant Eberl and Defendant AmGuard and their adjuster Bradley Grossman, intentionally and improperly interfered with that contract and relationship by engaging in conduct described herein. These actions, individually and collectively, were a substantial factor in causing the partnership's termination and directly thwarted its potential for future economic success, resulting in damages.

82.     The wrongful acts and conduct of Defendant AmGuard and Defendant NARS, through its adjusters Pamela Brown and Julius Lester, with Defendant Eberl, acting in concert with or as a substantial contributing factor to the conduct of the Defendants adjuster named Bradley Grossman, constitute intentional and improper interference with the partnership's contractual and business relationships. The collective actions of these Defendants, as described herein, were a direct and proximate cause of the partnership's collapse and the erosion of trust that was the foundation of the business relationship, thereby causing significant economic damage. As a direct and proximate result of defendants' intentional interference, the business relationship was terminated.

83.     Plaintiff has suffered and will continue to suffer actual damages as a result of defendants tortious conduct.

84.     As a direct and proximate result of defendants' interference, the business relationship between plaintiff and Matthew Ng was destroyed, and plaintiff suffered damages, including the loss of the Caribbean project development financing and other joint ventures.

## COUNT II - FRAUDULENT MISREPRESENTATION
## (AGAINST ALL DEFENDANTS)

85.     Plaintiff re-alleges and incorporates by reference the allegations contained in paragraph 1 through 84.

86.     Defendants, acting individually and through their agents/adjusters made material representations of fact to plaintiff, including that Bradley Grossman was an AmGuard claims adjuster and that if there is an estimate from the insured side, the insurance carrier *"will collaborate and eventually find an estimate that is fair and reasonable"*.

87.     These representations were false, and defendants knew they were false when made, or made them with reckless disregard for the truth.

88.    Defendants made these representations among the others with the intent to deceive and induce plaintiff to rely upon them, specifically to prevent plaintiff from hiring a true advocate for the claim.

89.    Plaintiff justifiable and reasonably relied on all the misrepresentations, including these misrepresentations to his detriment.

90.    As a direct and proximate result of plaintiff's reliance on defendants' fraud, plaintiff suffered damages, including the loss of the partnership, the failure of the project, lost profits, and other consequential damages in an amount to be proven at trial but believed to be in excess of $75,000.

91.    Defendants, acting through their adjuster (Bradley Grossman) made false representations of material fact to plaintiff, including adjuster (Bradley Grossman) identity, authority, and/or qualifications, and the promises of certain performances by defendants.

92.    Defendants knew these representations were false or made them with reckless disregard for the truth. This is evidence by Defendants adjuster's actual license status and Eberl's own corporate publications.

93.    Defendants engaged in a pattern of conduct designed to defraud Plaintiff. As part of this scheme, on or about August 17, 2022, Defendant NARS on behalf of AmGuard, falsely represented their future intent to act by stating in writing that their engineer will need to inspect the neighboring property to facilitate repairs. At the time this statement was made, Defendant NARS knew it was false and had no intention of ever performing said inspection. This misrepresentation was made with the express purpose of stringing Plaintiff along and inducing Plaintiff to forbear from pursuing legal action or hiring independent experts, in reasonable reliance upon Defendants' false promise to advance the claim.

94.    The letter dated August 17, 2022, from Defendant NARS, specifically stated that *"to determine the most effective way to complete the repairs, the engineer will need to inspect the neighboring property"*. This representation was false, as Defendant NARS had no intention of conducting such an inspection. Defendant NARS made this false statement with the intent to deceive the Plaintiff and induce continued reliance, thereby preventing Plaintiff from taking other action to mitigate damages. To date, no such inspection has been performed, nor has a report been provided.

95.    Plaintiff justifiable relied on these misrepresentations among the others, in his capacity as agent/representative, and in his communication with his business partner, Matthew Ng.

96.    As a direct and proximate result of this reliance, plaintiff suffered injury, including the destruction of his business relationship with Matthew Ng and the resulting financial losses.

## COUNT III - NEGLIGENT HIRING, RETENTION AND SUPERVISION (AGAINST ALL DEFENDANTS

97.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 96.

98.    Defendants had a duty to the public, including individuals like plaintiff who must interact with their agents and/or adjusters, to ensure their agents and/or adjusters are legally licensed, qualified, and properly supervised.

99.    Defendants breached this duty by dispatching their adjuster (Bradley Grossman), an individual they knew or should have known was legally prohibited and unqualified to perform the assigned task.

100. Plaintiff was a foreseeable victim of this negligence.

101. This breach was a direct and proximate cause of the misrepresentations and resulting harm that destroyed plaintiff's business relationship and caused plaintiff's financial ruin.

102. Defendants had a duty to the public, including plaintiff, to exercise reasonable care in the supervision and retention of their agents and/or adjusters employees, those it cloaks with apparent authority.

103. Defendants knew or should have known that Bradley Grossman had a propensity to engage in the wrongful conduct described herein, including misrepresenting his authority.

104. Defendants breached their duty by failing to properly supervise Bradley Grossman and by permitting him to interact with claimant(s) under the guise of an AmGuard employee, thereby creating the foreseeable risk of harm that occurred.

105. As a direct and proximate result of defendants' negligence, plaintiff suffered the damages described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brian Ng respectfully requests that this Court enter judgment in his favor and against defendants: AmGuard Insurance Company, North American Risk Services, Inc. and Eberl Claims Services, LLC, jointly and severally, for the following relief:

A. Compensatory damages for lost profits and the value of the lost business opportunities, including the Caribbean development project(s), in an amount to be determine at trial, but believe to exceed several million dollars;

B.     Damages for harm to his business reputation; and consequential business losses;

C.     Punitive damages in an amount sufficient to punish defendants for their willful, malicious, and fraudulent conduct and to deter similar conduct in the future;

D.     Pre-judgment and post-judgment interests as allowed by Law;

E.     Costs of this action, including reasonable attorney's fee, if any; and

F.     Such other and further relief as the Court deems just and proper.


## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: October 3, 2025


Respectfully Submitted,

Brian Ng, Plaintiff, Pro Se
Church Street Station
P. O. Box 2723
New York, N.Y. 10008
Tel: 646.820.9238
Email:Brian.Ng3888@gmail.com


Sworn to before me this

3 day of October 3, 2025

Notary Public

FELIZ ZORAYA E
Notary Public State of New York
No. 01FE5078179
Qualified in Queens County
Commission Expires 05/19/20 27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
BRIAN NG

                             Plaintiffs,

                                                       Civil **Case Action 1:25-cv-00806**

      -against-

AmGUARD INSURANCE COMPANY;
NORTH AMERICAN RISK SERVICES, INC;
EBERL CLAIMS SERVICES LLC.

                             Defendants.
------------------------------------------------------------------------x


## <u>CERTIFICATE OF SERVICE</u>

       I, Brian Ng, (Plaintiff, Pro Se) hereby certify and declare under penalty of perjury that on October 3, 2025, my Second Amended Verified Complaint dated October 3, 2025, have been submitted for filing by the pro se office electronically using the Court's Electronic Case Filing ("ECF") System, which sent a notice of filing activity to all attorney(s) of record. These documents are available for viewing and downloading from the Court's ECF System.


Dated: October 3, 2025
       New York, N.Y.

                                   Brian  Ng
                               Church Street Station
                               P.O. Box 2723
                               New York, N.Y. 10008
                               Tel/Fax: 646-820-9238

**CIVIL CASE#: 1:25-cv-00806**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**
**U.S. COURTHOUSE, 500 PEARL STREET, NEW YORK, N.Y. 10007**

BRIAN NG

Plaintiff,

-against-

AmGUARD INSURANCE COMPANY;
NORTH AMERICAN RISK SERVICES, INC;
EBERL CLAIMS SERVICES LLC.

Defendants

# PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT

To the best of my knowledge, information and belief,
formed after an inquiry reasonable under the circumstances,
The presentation of these papers or the contentions therein
are not frivolous as defined in subsection (c) of section
130-1.1 of the Rules of the Chief Administrator (22NYCRR)

**SELF REPRESENTED LITIGANT INFORMATION**
October 3, 2025

Sign Name: _____

Print Name: **BRIAN NG**

**Address:**
Church Street Station
P.O. Box 2723
New York, N.Y. 10008
Tel/Fax: 646.820.9238