**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X
BRIAN NG,

                                    Plaintiff,

                    -against-

AMGUARD INSURANCE
COMPANY, et al.,

                               Defendants.
-------------------------------------------------------------------------X

**25 Civ. 806 (VSB) (GS)**

**OPINION & ORDER**

**GARY STEIN, United States Magistrate Judge:**

Plaintiff Brian Ng ("Plaintiff" or "Ng"), proceeding *pro se*, brings this

action against Defendants AmGUARD Insurance Company ("AmGuard"), an

insurance company, North American Risk Services, Inc. ("NARS"), a third-party

claims administrator, and Eberl Claims Services, LLC ("Eberl"), a claims

management company (collectively, "Defendants"). Ng's initial Complaint

asserted claims against Defendants for their alleged nonpayment of amounts

owed under an insurance policy held by Matthew Wai Hong Ng (on whose

behalf Plaintiff allegedly holds a power of attorney). (Dkt. No. 1 ("Complaint" or

"Compl.")). Ng's Second Amended Complaint, now the operative complaint, filed

October 3, 2025, asserts claims against Defendants for their alleged interference

with his business relationship with Matthew Ng. (Dkt. No. 77 ("SAC")).

On October 23, 2025, Ng received a Clerk's Certificate of Default as to

Defendants Eberl and NARS for their failure to timely respond to his SAC.

(Dkt. No. 90). Eberl and NARS have moved to vacate the defaults entered

against them.  (Dkt. Nos. 93, 100).  For the reasons set forth below, Eberl's and NARS's motions to vacate the Clerk's Certificate of Default are **GRANTED**.[1]

## BACKGROUND

On January 28, 2025, Ng filed his initial Complaint.  (Dkt. No. 1).  After Judge Broderick determined that Ng's Complaint failed to plead subject-matter jurisdiction, the Complaint was dismissed without prejudice on March 13, 2025. (Dkt. No. 19).

On April 11, 2025, Ng filed his First Amended Complaint ("FAC").  (Dkt. No. 20).  On May 1, 2025, Eberl first appeared and requested (and received) an extension of time to respond to the FAC.  (Dkt. Nos. 28, 29).  NARS first participated in the case through the filing of its Answer on May 14, 2025.  (Dkt. No. 14).  On June 3, 2025, Eberl filed its Motion to Dismiss the FAC and supporting papers.  (Dkt. Nos. 47, 48, 49).[2]

Following Eberl's Motion to Dismiss, this Court issued an Order giving Plaintiff the opportunity to either file an opposing brief or amend his FAC to cure the defects alleged by Eberl.  (Dkt. No. 57).  As a result of ultimately unsuccessful efforts to resolve the case, discussed during status conferences

---

[1] The Honorable Vernon S. Broderick has referred this matter to the undersigned for, *inter alia*, general pretrial supervision, including nondispositive motions.  (Dkt. No. 72).

[2] On June 6, 2025, Ng sought sanctions against NARS for its Rule 7.1 Corporate Disclosure Statement, which NARS responded to on June 11, 2025.  (Dkt. Nos. 56, 58).  This Court denied Ng's request as "wholly unwarranted," finding that NARS had complied with the Court's prior order on the issue.  (Dkt. No. 59).  The Court cautioned Ng against "overreaching filings that lack any reasonable basis in law or fact or seek relief that is plainly inappropriate."  (*Id.*).

held on July 8, 2025 and September 12, 2025, Ng's time to respond to Eberl's Motion to Dismiss the FAC was extended to October 14, 2025.  (Dkt. No. 64; Dkt. Entry dated September 12, 2025).

On October 3, 2025, Ng filed his SAC.  In his SAC, Ng no longer seeks relief on behalf of Matthew Ng, but instead seeks recovery on his own behalf for Defendants' alleged tortious interference with contract, fraudulent misrepresentations, and negligent hiring, retention, and supervision.  (SAC at 6–22).  Among other things, Ng alleges that Defendants' conduct intentionally interfered with his partnership with Matthew Ng to develop property in the Caribbean.  (*Id.*).  The SAC was filed after Matthew Ng filed his own action against Defendants on September 22, 2025, containing factual allegations similar to those in the FAC.  (*See Ng v. AmGuard Insurance Co.*, No. 25 Civ. 7855 (VSB) (GS) (S.D.N.Y.), Dkt. No. 1).

On October 22, 2025, Ng filed a proposed Certificate of Default with the Clerk's Office as to NARS and Eberl.  (Dkt. No. 88).  Ng claimed that, pursuant to Fed. R. Civ. P. 15(a)(3) and 6(d), NARS and Eberl were required to respond to the SAC by October 21, 2025, and that neither did so by that date.  (Dkt. No. 89 ¶¶ 9–11).  The following day, the Clerk's Office issued a Certificate of Default as to NARS and Eberl.  (Dkt. No. 90).

NARS filed an answer to the SAC on October 24, 2025.  (Dkt. No. 92).  On October 27, 2025, Eberl filed a letter motion seeking, *inter alia*, vacatur of the Certificate of Default.  (Dkt. No. 93 ("Eberl Mot.")).  The following day, Judge

3

Broderick issued an Order allowing Ng and NARS to submit briefing on the issue of whether the defaults should be vacated.  (Dkt. No. 94).  Judge Broderick wrote that although "there does not appear to be any willfulness, meritorious defense,[3] or prejudice present here" (the factors courts evaluate when considering vacating an entry of default), "in the interests of judicial efficiency and fairness, I will consider any briefing from Defendant NARS or Plaintiff Ng before ruling on Defendant Eberl's request to vacate the Clerk's Default Judgment."  (*Id.* at 2).

On October 30, 2025, Eberl filed its Second Motion to Dismiss as to Ng's SAC.  (Dkt. No. 95).  NARS filed a letter motion to have the default issued against it vacated on November 4, 2025.  (Dkt. No. 100 ("NARS Mot.")).  Eberl filed an additional letter supporting vacatur on November 7, 2025.  (Dkt. No. 104 ("Eberl Supp.")).  Ng filed a brief opposing vacatur of the defaults as to both Defendants on November 3, 2025 (Dkt. No. 96 ("Pl. Br.")), and a supplemental letter on November 10, 2025 (Dkt. No. 107 ("Pl. Supp.")).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Courts may vacate an

---

[3] Based on the context, the Court assumes Judge Broderick meant to say that there did not appear to be any *absence* of a meritorious defense.

entry of default for "good cause shown." Fed. R. Civ. P. 55(c). The Second Circuit has instructed that this standard "requires a court to weigh (1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party." *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 454–55 (2d Cir. 2013) (cleaned up). "The movant bears the burden of demonstrating good cause for setting aside the default." *State Univ. of New York v. Triple O, LLC*, No. 21-2116, 2022 WL 14177198, at *2 (2d Cir. Oct. 25, 2022) (citing *Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1986)).

"Defaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the merits." *Meehan v. Snow*, 652 F.2d 274, 276–77 (2d Cir. 1981). "Although the factors to be considered are the same, the standard for deciding whether to vacate an entry of default is less rigorous than the standard to be applied in determining whether to vacate a default judgment." *Kryszak v. Norfolk S. Corp.*, No. 17 Civ. 530 (JLS) (MJR), 2020 WL 1445478, at *1 (W.D.N.Y. Mar. 25, 2020) (citing *Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 59 (2d Cir. 1996)). "[T]he extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *Meehan*, 652 F.2d at 277. "Accordingly, plaintiffs are not entitled to a default judgment as a matter of right simply because a party is in default." *Lata v. Live Constr. Corp.*, No. 24 Civ. 5981 (RER) (CLP), 2025 WL

2782336, at *3 (E.D.N.Y. Sept. 18, 2025), *R&R adopted*, 2025 WL 2782495 (E.D.N.Y. Sept. 30, 2025).

"'Good cause under Rule 55(c) should be construed generously, and the dispositions of motions for entries of defaults and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case.'" *Amiel v. Evo Brands, LLC*, No. 24 Civ. 7327 (PMH), 2025 WL 3078161, at *3 (S.D.N.Y. Nov. 4, 2025) (quoting *Caleb & Brown Pty. Ltd. v. Thompson*, No. 20 Civ. 8612 (LAP), 2021 WL 4226183, at *2 (S.D.N.Y. Sept. 16, 2021)).  "[W]hen doubt exists as to whether a default should be . . . vacated, the doubt should be resolved in favor of the defaulting party." *Henry v. Oluwole*, 108 F.4th 45, 51 (2d Cir. 2024) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)).

"'A motion to set aside an entry of default is subject to disposition by a magistrate judge under 28 U.S.C. § 636(b)(1)(A).'" *Hubbuch v. Mullooly, Jeffrey, Rooney & Flynn LLP*, No. 25 Civ. 5547 (JHR) (BCM), 2025 WL 2592155, at *4 (S.D.N.Y. Sept. 8, 2025) (quoting *Johnson v. New York Univ.*, 324 F.R.D. 65, 67 n.2 (S.D.N.Y. 2018)); *see also Kryszak*, 2020 WL 1445478, at *1 ("While motions to set aside an entry of default are not listed among the types of relief in Section 636(b) that are expressly dispositive, a number of courts, including many district courts within the Second Circuit, have treated them as non-dispositive." (collecting cases)); *Sheet Metal, Air, Rail & Transportation Workers Loc. Union No. 137 v. Frank Torrone & Sons, Inc.*, No. 15 Civ. 2224 (KAM) (PK), 2018 WL

6

4771897, at *8 (E.D.N.Y. Oct. 3, 2018) ("Although the Second Circuit has not definitively ruled on the issue, the weight of authority indicates that vacatur of a default is not dispositive.").

## DISCUSSION

Applying the relevant factors under Second Circuit precedent, the Court finds that all three factors weigh in Eberl and NARS's favor and that the defaults entered against them should be vacated for good cause shown.

### A. Willfulness of Default

"In determining the willfulness of a default, the Second Circuit has made clear that carelessness or negligence are insufficient to constitute willfulness." *Kryszak*, 2020 WL 1445478, at *3 (citing *Am. All. Ins. Co.*, 92 F.3d at 61). Willfulness is "egregious or deliberate conduct," such as where a defaulting defendant makes "a strategic decision to default." *Am. All. Ins. Co.*, 92 F.3d at 60–61. "[T]he degree of negligence . . . is a relevant factor to be considered," yet even gross negligence "does not necessarily preclude relief." *Id.* at 61. "The Second Circuit looks for bad faith or for at least something more than mere negligence before rejecting a claim of excusable neglect based on an attorney's or a litigant's error." *Jones v. Herbert*, No. 02 Civ. 0847E(F) (LGF), 2004 WL 3267285, at *2 (W.D.N.Y. Oct. 27, 2004) (citing *Am. All. Ins. Co.*, 92 F.3d at 60).

The inquiry focuses on what actions, if any, the defaulting party took "after it became aware of the existence of the litigation or entry of default." *Haran v. Orange Bus. Servs. Inc.*, No. 21 Civ. 10585 (VSB), 2022 WL

7

2306945, at *2 (S.D.N.Y. June 27, 2022) (internal quotation marks omitted). "The following considerations are relevant to that determination, none of which is dispositive: 'whether the defendant moved promptly to vacate the default upon notice of the judgment, whether the defendant made its correct address unavailable to plaintiff, whether the defendant had actual notice of the action, and whether the defendant knew that the plaintiff had a claim against them.'" *Featherstone Ent., LLC v. Grand Hustle Films, LLC*, No. 25 Civ. 5124 (LLS), 2025 WL 2778958, at *1 (S.D.N.Y. Sept. 30, 2025) (quoting *Durso v. Mod. Food Ctr., Inc.*, No. 17 Civ. 7324 (LAK) (GWG), 2019 WL 2150424, at *5 (S.D.N.Y. May 17, 2019)); *see also Vertamedia Grp., Inc. v. Patient Conversation Media, Inc.*, No. 15 Civ. 6281 (ILG), 2016 WL 7441643, at *2 (E.D.N.Y. Dec. 27, 2016).

Neither Eberl nor NARS explains explicitly why they did not respond to the SAC (or file a motion seeking an extension of their time to respond) within 14 days of Ng's filing the SAC on the docket. *See* Fed. R. Civ. P. 15(a)(3). NARS, however, argues that it need not have responded, as Ng's SAC was not properly filed under Fed. R. Civ. P. 15(a)(1). (NARS Mot. at 2). Specifically, NARS argues that Ng's right to amend his pleading as a matter of course under Rule 15(a)(1) within 21 days after service of the pleading or within 21 days after the filing of a responsive pleading or Rule 12 motion expired in February 2025. (*Id.*). As such, because Ng did not have leave of the Court to file his SAC on October 3, 2025, NARS contends the SAC "was not a proper basis for holding

NARS in default." (*Id.*).  Eberl "adopt[s]" this argument in its supplemental letter.  (Eberl Supp. at 1).

However, as Ng correctly points out in his supplemental letter, he *did* receive leave of the Court to amend his FAC, not once but twice.  (Pl. Supp. at 2).  First, this Court issued a memo endorsement on June 30, 2025, instructing Ng that he may either "oppose Defendant Eberl's motion to dismiss *or file a Second Amended Complaint*" no later than August 8, 2025.  (Dkt. No. 61 (emphasis added)).  Subsequently, this deadline was stayed pending certain, specific discovery matters.  (Dkt. No. 64).  That stay was lifted during a status conference with this Court on September 12, 2025, which NARS attended, and Ng was ordered to file his opposition *or* an SAC by no later than October 14, 2025.  (Dkt. Entry dated Sept. 12, 2025).  Accordingly, Ng's filing was permissible.  *See Powercap Partners LLC v. Fleischmann*, No. 20 Civ. 3428 (RRM) (RML), 2023 WL 2711316, at *2 (E.D.N.Y. Mar. 30, 2023) (noting that motion for leave to amend under Rule 15(a)(3) is "unnecessary" where court has already granted leave to amend).

Nonetheless, the other circumstances in this case do not give rise to an inference of willfulness on the part of Eberl or NARS.  Both Defendants moved quickly to request that the default entries be vacated.  "The Second Circuit has found that a defendant's prompt application for a motion to set aside an entry of default suggests that the default was not willful." *Saidnia v. Nimbus Mining LLC*, No. 21 Civ. 7792 (VSB), 2024 WL 2962628, at *4 (S.D.N.Y. June 11, 2024)

(citing *Enron Oil Corp.*, 10 F.3d at 98).  Moreover, both Eberl and NARS had participated fully in the case up until this point, including Eberl's having timely filed a Motion to Dismiss as to Plaintiff's FAC and NARS's having timely filed an Answer as to the FAC.  (Dkt. Nos. 47–49, 37).

Both defaulting Defendants have thus demonstrated "an intent to meaningfully participate in this litigation." *Featherstone Ent.*, 2025 WL 2778958, at *2; *see also Saidnia*, 2024 WL 2962628, at *3 (finding lack of willfulness after defendants "'actively defended' th[e] action by filing a motion to dismiss and participating in settlement discussions with Plaintiff prior to their failure to timely answer").  Where a party has participated in the litigation, even where failing "to comply with court orders on numerous occasions," that party is, at most, more accurately described as demonstrating "grossly negligent conduct" than willfulness.  *Durso*, 2019 WL 2150424, at *7.  Assuming either defaulting Defendant did not respond to Ng's SAC because it incorrectly believed that the SAC was filed in violation of Rule 15, this would fall even below the standard of "grossly negligent conduct" that is demonstrated through failure to comply with court orders.[4]

---

[4] Indeed, the circumstances here are substantially less severe than in cases in which willfulness has been found. *Cf. Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (defaulting party failed to file responsive pleading for over nine months after receipt of summons and complaint); *Vertamedia Grp.*, 2016 WL 7441643, at *3 (defaulting party intentionally returned unopened complaint without explanation); *Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 338–39 (S.D.N.Y. 2013) (defaulting party stopped using registered agent and failed to update address listed with Secretary of State); *see also Featherstone Ent.*, 2025 WL 2778958, at *2 (finding no willfulness by defaulting party who failed to respond to complaint, appear at show cause hearing or conference, or hire counsel for

Thus, the Court is unpersuaded by Ng's argument that both Defendants acted willfully in knowing about the SAC, yet failing to timely respond. (Pl. Supp. at 2). Ng adds another argument as to NARS, contending that NARS acted willfully given that it "failed to serve [its Answer]" on him. (*Id.* at 2–3). Ng asserts that this is a "fundamental failure of due process" and part of a "pattern of 'egregious' and bad-faith conduct." (*Id.*). This assertion lacks foundation. NARS did attest to service of its Answer via ECF. (Dkt. No. 92 at 6). While this is insufficient in this case as Ng is a non-ECF litigant, counsel's mistake does not warrant a finding of willfulness. By demonstrating an attempt to serve Ng via ECF, and having historically done so properly in this case, NARS is more aptly described as having acted negligently with respect to the filing of its Answer.

Eberl and NARS, through their prompt motions to vacate the entries of default and consistent, active participation in this matter, have not shown willfulness. Even had this been a close call, and it is not, "doubt should be resolved in favor of the defaulting party." *Oluwole*, 108 F.4th at 51.

### B. Existence of Meritorious Defenses

"A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Am. All. Ins. Co.*, 92 F.3d at 61 (internal quotations omitted); *see also Enron Oil Corp.*, 10 F.3d at 98 (holding that

---

months after receiving actual notice, but who responded "almost immediately" to plaintiff's motion for default judgment).

whether a defense is meritorious "is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense"). "This is a 'low threshold.'" *Hubbuch*, 2025 WL 2592155, at \*5 (quoting *Cabrera v. Freedom Mortg. Corp.*, No. 23 Civ. 10556 (JLR), 2024 WL 1805558, at \*3 (S.D.N.Y. Apr. 25, 2024)).

Eberl presents several meritorious defenses, for these purposes, in its Motion to Dismiss. (Dkt. No. 95 Ex. 7). First, Eberl argues that it holds no common law or contractual duty to Ng, or Matthew Ng, and that Ng fails to state a cause of action against it. (*Id.* at 7–9). As to Ng's tortious interference claim, Eberl argues that Ng's allegations fail to sufficiently plead a binding contractual relationship between Ng and Matthew Ng, a breach by Matthew Ng, or intentional interference by Eberl. (*Id.* at 9–12). On Ng's fraudulent misrepresentation claim, Eberl argues that Ng did not plead his claim with the particularity required under Fed. R. Civ. P. 9(b) or allege how the alleged misrepresentations caused him direct damages. (*Id.* at 12–13). Finally, as to Ng's negligent hiring, retention, and supervision claim, Eberl argues that Ng was not a foreseeable victim entitled to relief under applicable law, that any lack of qualifications as to the allegedly misrepresenting employee does not tie to Ng's damages, and that Eberl did not possess knowledge of the facts that would lead a reasonably prudent person to investigate the prospective employee, as required under law. (*Id.* at 13–15).

Ng claims that these defenses are facially deficient and misapply the law. (Pl. Br. at 2; Pl. Supp. at 3). Ng characterizes Eberl's first argument as a "red herring," contending that the SAC does not seek damages under the applicable policy, but under independent torts. (Pl. Br. at 3; Pl. Supp. at 3). According to Ng, despite acting as an agent to AmGuard, which may preclude contractual liability, Eberl (and NARS) are personally liable for their own independent torts. (Pl. Br. at 3; Pl. Supp. at 3). Further, Ng argues that he has pled, with particularity, all applicable elements for his tort claims. (*Id.*).

The Court need not, and does not, assess the relative merits of these arguments to decide Eberl's motion to vacate entry of default. It is sufficient to say that Eberl's arguments are not so facially deficient as to justify a finding that Eberl lacks meritorious defenses to Ng's claims. Further, whether or not Eberl is able to prevail on a motion to dismiss, Ng's claims ultimately would require proof of intentional wrongdoing by Eberl, and the Court cannot conclude based on the SAC's mere allegations that Ng will be able to adduce such proof. *See Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173–74 (2d Cir. 2001) (finding meritorious defense on arguments that were insufficient to prevail in motion to dismiss); *Weinstein v. Cardis Enters. Int'l N.V.*, No. 16 Civ. 2661 (SJF) (SIL), 2017 WL 354191, at *3 (E.D.N.Y. Jan. 24, 2017) (finding meritorious defense where pending motions to dismiss did more than "mere[ly] mention . . . possible meritorious defenses"); *Sardarian v. Fed. Emergency Mgmt. Agency*, No. 3:19 Civ. 910 (CSH), 2020 WL 1542374, at *6 (D. Conn. Jan. 9, 2020) ("The

13

Court concludes that in filing their motion to dismiss, Defendants have fulfilled the second factor for the Court to set aside the default. Although they have not established their defenses conclusively, they have 'present[ed] evidence of facts' and legal authorities that may potentially 'constitute a complete defense.'" (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998))).

NARS did not submit a Motion to Dismiss, but did file an Answer denying the SAC's allegations and including twelve affirmative defenses. (Dkt. No. 92). Without having tested these defenses or yet heard Ng's potential arguments against their applicability, the Court does not find them so facially deficient as to fail to provide a meritorious defense. *See Saidnia*, 2024 WL 2962628, at *5 (finding presentation of affirmative defenses, even after denial of motion to dismiss, as raising meritorious defenses for Rule 55(c) purposes); *Franco v. Ideal Mortgage Bankers, Ltd.*, No. 07 Civ. 3965 (JS) (AKT), 2010 WL 3780972, at *3 (E.D.N.Y. Aug. 23, 2010) (recommending that defendant who filed an answer asserting twenty-five affirmative defenses be considered to have raised a meritorious defense), *R&R adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010). Specifically, NARS raises affirmative defenses, *inter alia*, that Ng lacks standing, that NARS owed no duty to Ng, and that the action was commenced after the expiration of the applicable statute of limitations. (Dkt. No. 92 at 3–4). Any of these arguments, in addition to some not mentioned, would suffice to present a complete defense if proven.

14

Accordingly, the Court concludes that both Eberl and NARS have potentially meritorious defenses in this action.

## C. Prejudice to Plaintiff

"A decision to vacate an entry of default which merely causes delay will not constitute prejudice." *Kryszak*, 2020 WL 1445478, at *3 (citing *Enron Oil Corp.*, 10 F.3d at 98); *see also Meehan*, 652 F.2d at 277 ("[I]t is evident that a ten-day delay in submitting an amended answer to a complaint amended nearly one year after it was first answered would not have led to a default judgment."). "For the delay in filing the answer to prejudice [the non-defaulting party], the delay must result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Jones*, 2004 WL 3267285, at *3 (citing *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir.1983)).

Here, there is no prejudice to Ng.  Eberl and NARS's delays do not threaten lost discovery or prevent Ng from accessing discovery, as discovery has not begun. *See Goo v. Hand Hosp. LLC*, No. 23 Civ. 8235 (VSB), 2025 WL 357745, at *2 (S.D.N.Y. Jan. 31, 2025) (finding no prejudice as the case was "still in its early stages, and discovery can proceed without any substantial disruption"); *Diaz v. Westbury Pancake House, Inc.*, No. 16 Civ. 743 (DRH) (SIL), 2017 WL 650733, at *6 (E.D.N.Y. Feb. 1, 2017) (noting that "discovery has yet to occur, which does not favor a finding of prejudice"), *R&R adopted*, 2017 WL 639253 (E.D.N.Y. Feb. 16, 2017).

15

Ng claims that vacating the default entries here would "reward" Eberl and NARS for the same kind of conduct "that is subject of this lawsuit: intentional, bad-faith delay." (Pl. Br. at 3). But the Court has already found that Defendants' defaults were not willful, let alone the product of intentional, bad-faith delay. And even if that were not the case, vacating the defaults still would not lead to any prejudice to Ng.

Ng further claims that by vacating the defaults, this Court would "green-light" Defendants' strategy of delay and "force Plaintiff, a *pro se* litigant, to expend endless resources responding to Defendants' willful procedural games." (*Id.* at 4). But Defendants' failure to respond initially to the SAC caused only a minimal delay (Ng's multiple amendments to his pleading have resulted in far longer delays in this litigation), and in any event, as noted above, "[d]elay alone does not establish the prejudice required to default a motion to vacate a default." *Peak v. Maraj-Petty*, No. 25 Civ. 7552 (VSB), 2025 WL 3168743, at *3 (S.D.N.Y. Nov. 13, 2025); *see also William Gottlieb Mgmt. Co, LLC v. Carlin*, No. 20 Civ. 8907 (PRAC), 2022 WL 17822578, at *4 (S.D.N.Y. Dec. 20, 2022) ("Since '[s]ome delay is inevitable when a motion to vacate a default judgment is granted [ ] delay alone is not a sufficient basis for establishing prejudice.'" (quoting *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005))).

Finally, Ng argues that he has been prejudiced by having to engage in "unnecessary, complex, and burdensome motion practice" in responding to Defendants' vacatur arguments. (Pl. Supp. at 4). However, "[t]he obligation to

16

respond to a Rule 55(c) motion cannot constitute the prejudice necessary to defeat such a motion." *Hubbuch*, 2025 WL 2592155, at *5. Similarly, Ng's claim that he is prejudiced from the loss of his "procedural right" to a default (Pl. Supp. at 4) is without merit. "[T]he assertion that vacatur of an entry of default will deprive the plaintiff of the opportunity to receive a judgment without litigating the merits of its claims cannot alone constitute prejudice under Rule 55(c)." *Phoenix Fashion, Inc. v. Saadia Grp. LLC*, No. 23 Civ. 5788 (LJL), 2024 WL 1555265, at *3 (S.D.N.Y. Apr. 10, 2024); *see also Globe Indem. Co. v. J.T. Falk & Co.*, No. 91 Civ. 0271 (PKL), 1992 WL 116630, at *9 (S.D.N.Y. May 15, 1992) ("That [plaintiff] will have to litigate the merits of its claims against [defendant] is not, however, the sort of prejudice that militates against setting aside the default . . . . Similarly, the mere fact that [plaintiff] will now have to incur expenses in prosecuting its claims . . . that it would not incur if the Court denied [defendant's] motion to set aside the default does not rise to the level of prejudice that would warrant denial of [defendant's] motion.").

As such, the Court finds that there is no prejudice to Plaintiff from vacating the defaults here. Although Ng may have hoped he had found a shortcut around having to prove his claims against Eberl and NARS on the merits, "[l]itigation in federal court is not a 'gotcha' game." *Magee v. Walt Disney Co.*, No. 19 Civ. 10274 (AJN), 2020 WL 6047428, at *2 (S.D.N.Y. Oct. 13, 2020); *see also Am. All. Ins. Co.*, 92 F.3d at 62 (noting the "strong preference for resolving disputes on the merits").

**D. Warning Concerning Use of AI**

Further, although it does not impact the Court's analysis as to whether to vacate the defaults, the Court instructs Plaintiff to take due care in his legal citations in the future.  In his argument as to liability for insurance agents for their individual torts, Ng cites to *Greyhound-Thermalink, Inc. v. B.U.R. Realty Corp.*, 42 A.D.3d 319, 320 (N.Y. 1st Dep't 2007) ("An agent . . . may be held individually liable in tort for its own wrongful acts.")).  (Pl. Br. at 3).  However, based on the Court's research, *Greyhound-Thermalink* does not appear to exist.

As is by now well known, ChatGPT and similar AI programs can sometimes generate fake case citations or other misstatements of law. Submitting fake citations to a court is unacceptable, whether engaged in by an attorney or a *pro se* litigant.  It is therefore imperative that parties check the veracity and accuracy of citations generated by AI programs.  Accordingly, Ng is hereby warned that any future filings with citations to nonexistent cases may result in sanctions, such as his submissions being stricken, filing restrictions or monetary penalties being imposed, or the case being dismissed.  *See Dukuray v. Experian Info. Sols.*, No. 23 Civ. 9043 (AT) (GS), 2024 WL 3812259, at *11 (S.D.N.Y. July 26, 2024), *R&R adopted*, 2024 WL 3936347 (S.D.N.Y. Aug. 26, 2024).

Additionally, all parties are reminded that Judge Broderick recently updated the Individual Rules and Practices in civil cases before him to make clear that, under Rule 4(J), "[c]onsistent with Rule 11(b) of the Federal Rules of

18

Civil Procedure, . . . any party, whether appearing *pro se* or through counsel, who utilizes any generative artificial intelligence (AI) tool in the preparation of any documents filed with the Court must disclose that AI has been used." If used "in the drafting of any documents filed with the Court, the party must certify in the document that it has independently reviewed and verified the accuracy of any portion of the document drafted by generative AI, including all citations . . . ." Accordingly, moving forward, all parties must comply with this Rule.

## CONCLUSION

For the above reasons, the Clerk of Court is respectfully instructed to set aside the defaults entered as to Defendants North American Risk Services, Inc. and Eberl Claims Services, LLC. In addition, Defendant NARS is instructed to properly serve Ng with a copy of its Answer (Dkt. No. 92), and submit proof of service, by no later than Friday, January 9, 2026.

**SO ORDERED.**

DATED:    New York, New York
          December 29, 2025

_____
The Honorable Gary Stein
United States Magistrate Judge

19