UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BRIAN NG,<br><br>Plaintiff,<br><br>- against -<br><br>AMGUARD INSURANCE CO. *et al.*,<br><br>Defendants. | : | 25-CV-806 (VSB) (GS)<br><br>**OPINION & ORDER** |

Appearances

Brian Ng
Church Street Station
P.O. Box 2723
New York, NY
*Pro Se Plaintiff*

Yale Howard Glazer
Lazare Potter Glazer & Moyle LLP
New York, NY
*Counsel for Defendant Amguard Insurance Co.*

Amanda Maria Zefi
Michael Adam Czolacz
Rebecca June Rosedale
Morris Duffy Alonso & Faley
New York, NY
*Counsel for Defendant North American Risk Services, Inc.*

Seth Ian Weinstein
Thomas Blasé Coppola
Lewis Brisbois Bisgaard & Smith, LLP
New York, NY
*Counsel for Defendant Eberl Claims Services LLC*

VERNON S. BRODERICK, United States District Judge:

Pro se Plaintiff Brian Ng ("Plaintiff" or "Brian Ng") brings claims against Defendants Amguard Insurance Company, ("Amguard"), North American Risk Services, Inc. ("NARS"), and Eberl Claims Services, LLC, (("Eberl") and collectively "Defendants"). This Opinion & Order addresses Magistrate Judge Gary Stein's Report & Recommendation concerning three motions. (Doc. 160 ("Report" or "Rep.").) This Opinion & Order also addresses Ng's objections to the Report. (Doc. 161 ("Objections" or "Objs").) For the reasons that follow, I hereby ADOPT the Report in full. Ng's objections are OVERRULED.

## I. **Factual Background**[1]

Plaintiff is a citizen of the State of New York who had a business relationship with Matthew Ng. (TAC ¶¶ 2, 5.) Amguard is an insurance company that is a citizen of Pennsylvania and Nebraska. (*Id.* ¶¶ 6–9.) NARS is a claims administrator and adjuster that is a citizen of Delaware and Florida. (*Id.* ¶¶ 10–13.) Eberl is a claims management company that is a citizen of Colorado and Missouri. (*Id.* ¶¶ 14–19.)

Plaintiff and Matthew Ng established a business partnership on January 23, 2021 to develop Caribbean rental properties. (*Id.* ¶¶ 24–30.) Matthew Ng agreed to make a $200,000 capital contribution to this project, which was "contingent upon the timely and fair settlement of a pending insurance claim with" Amguard. (*Id.* ¶¶ 31–33; *see also id.* Ex. 1 ("Agreement") ¶ 3 (Matthew Ng "will provide initial contributions/funds in the amount of US $200,000.00 Dollars to cover immediate projects costs and related expenses, but only if coverage is confirmed, with

[1] This factual background is derived from the allegations in Plaintiff's third amended complaint, the operative pleading in this matter. (Doc. 139 ("Third Amended Complaint" or "TAC").) I assume the allegations set forth in the Third Amended Complaint to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings in this Opinion & Order.

respect to" the relevant claim).) The relevant insurance claim related to a property that Matthew Ng owned in Woodhaven, New York ("Woodhaven Property"), which had been damaged on January 15, 2021. (*Id.* ¶¶ 34–35.) Matthew Ng filed a claim with Amguard on January 22, 2021, appointed Plaintiff as his agent, and entrusted Plaintiff with his power of attorney on January 23, 2021. (*Id.* ¶ 35.)

On January 30, 2021, an insurance claim adjuster named Bradley Grossman ("Grossman") met with Plaintiff at the Woodhaven Property. (*Id.* ¶¶ 37–39.) Plaintiff alleges that Grossman made misrepresentations to Plaintiff over the course of that meeting. (*Id.* ¶¶ 36–45.) For example, Grossman said that "[i]f coverage is confirmed or afforded, I will go ahead and prepare an estimate," that "if coverage is afforded the insurance company will propose a settlement of the claim," that "if there is an estimate from the insured side, the insurance carrier will collaborate and eventually find a[n] estimate that is fair and reasonable," and that Amguard would "accept the NYC Department of Buildings finding including the violations, if coverage is afforded." (*Id.* ¶¶ 41–44.) Grossman also cautioned Plaintiff against hiring an independent adjuster because such action would "only slow down the process." (*Id.* ¶ 45.)

On March 10, 2021, a second adjuster named Julius Lester sent an email and letter to Matthew Ng and Plaintiff regarding the Woodhaven Property. (*Id.* ¶¶ 46–47.) On February 18, 2022, a structural engineer from EFI Global inspected the Woodhaven Property. (*Id.* ¶ 48.) On February 25, 2022, Julius Lester sent a letter to Matthew Ng and Plaintiff stating that Defendants would "make a coverage determination post the submission of the engineering report from EFI Global." (*Id.* ¶ 49.) On May 23, 2022, EFI Global sent an email to Plaintiff stating that NARS had requested a follow-up inspection at the Woodhaven Property and requesting access to the neighbor's property in order to complete the inspection. (*Id.* ¶ 50.) On August 31, 2022 and

September 8, 2022, NARS sent letters to Matthew Ng and Plaintiff following up on the status of the inspection. (*Id.* ¶¶ 51–52.)

On March 20, 2023, Amguard confirmed coverage for the loss that had occurred at the Woodhaven Property on January 15, 2021. (*Id.* ¶ 53.) On April 17, 18, and 20, 2023, NARS sent Plaintiff emails explaining that no estimate had been prepared by Grossman. (*Id.* ¶¶ 54–56.) Plaintiff then hired Estimating Services of New York, which provided a repair estimate of $180,116.95, which was later revised upward to $236,231.49. (*Id.* ¶¶ 57–58.) On approximately July 23, 2025, Amguard hired a second structural engineer, Andrea Shear, to inspect the Woodhaven Property. (*Id.* ¶ 70.) On August 28, 2025, Amguard presented a settlement offer of $64,795.76. (*Id.* Ex. 7 at 2.) On September 23, 2025, Matthew Ng sent a letter to Plaintiff terminating the Partnership Agreement and alleging that this offer was not a "fair and reasonable settlement," and that, thus, the conditions precedent for their partnership were not met. (*Id.* Ex. 7 at 1–2.)

On the basis of this course of conduct, Plaintiff asserts claims for (1) "tortious interference with contract," (*id.* ¶¶ 126–31); (2) "fraudulent misrepresentation[s]," (*id.* ¶¶ 132–36); and (3) negligent hiring, retention, and supervision," (*id.* ¶¶ 137–42).

## II. <u>Procedural History</u>

Plaintiff filed this suit on January 28, 2025. (Doc. 1.) I dismissed the case sua sponte without prejudice on March 13, 2025. (Doc. 19.) On April 11, 2025, Plaintiff filed an amended complaint, asserting claims for breach of contract on behalf of Matthew Ng. (Doc. 20.) Plaintiff claimed that Matthew Ng had granted Plaintiff his power of attorney and that Matthew Ng had designated Plaintiff his authorized representative. (*Id.*) On April 15, 2025, I filed an order of referral to Magistrate Judge Stein for general pretrial management. (Doc. 24.) Amguard

answered Plaintiff's amended complaint on April 24, 2025. (Doc. 25.) NARS answered Plaintiff's amended complaint on May 14, 2025. (Doc. 37.) Eberl moved to dismiss the amended complaint on June 3, 2025. (Docs. 47–49.) On June 5, 2025, I issued an amended order of referral in this matter to Magistrate Judge Stein for a report and recommendation on Eberl's motion. (Doc. 53.) On September 12, 2025, I issued a second amended order of referral to Magistrate Judge Stein for a report and recommendation on all dispositive motions. (Doc. 72.)

On October 3, 2025, rather than oppose Eberl's motion, Plaintiff filed a second amended complaint, asserting claims on behalf of himself, rather than Matthew Ng. (Doc. 77 ("Second Amended Complaint" or "SAC").) On October 20, 2025, Amguard filed a motion to dismiss the Second Amended Complaint, (Doc. 84), accompanied by a memorandum of law, (Doc. 85), and a declaration from Yale Glazer in support, (Doc. 86). On November 3, 2025, Plaintiff filed his memorandum of law in opposition to Amguard's motion to dismiss. (Doc. 98.) On November 10, 2025, Amguard filed a reply. (Doc. 105.)

On October 30, 2025, Eberl filed a motion to dismiss the Second Amended Complaint, (Doc. 95), along with a memorandum of law, (Doc. 96), and a supporting declaration from Seth I. Weinstein, (Doc. 95-1). On November 3, 2025, Plaintiff filed his memorandum of law in opposition to Eberl's motion. (Doc. 97.) On November 18, 2025, Eberl filed a reply. (Doc. 109.)

On October 24, 2025, NARS filed an answer to the Second Amended Complaint. (Doc. 92.) On December 11, 2025, NARS filed a motion for judgment on the pleadings, (Doc. 113), and an accompanying memorandum of law, (Doc. 113-1). On March 18, 2026, Plaintiff filed his opposition to NARS's motion. (Doc. 145.) On March 26, 2026, NARS filed a reply in support of its motion. (Doc. 148.) On March 30, 2026, Plaintiff requested leave to file a sur-reply,

attaching his proposed sur-reply to his filing, (Doc. 153), which Magistrate Judge Stein granted on April 7, 2026, (Doc. 156).[2]

Plaintiff had previously moved for leave to file a third amended complaint on January 6, 2026, (Doc. 118), which was granted by Magistrate Judge Stein on February 5, 2026, (Doc. 124). In the order granting leave to file the Third Amended Complaint, Magistrate Judge Stein required Defendants to inform the Court whether they intended to submit new motions or whether they wished to apply their previously filed motions to the Third Amended Complaint. (*Id.*) The Defendants all requested that their previously filed motions be applied to the Third Amended Complaint. (Docs. 125, 126, 128.) On February 17, 2026, Plaintiff requested leave to file a fourth amended complaint, (Doc. 130), which Magistrate Judge Stein denied, (Doc. 135).

On July 31, 2026, Magistrate Judge Stein issued the Report, which recommended that Defendants' motions be granted, that this case be dismissed, and that leave to amend should be denied. (Rep.) On August 8, 2026, Plaintiff filed his objections. (Objs.) On August 20, 2026, Amguard filed its response to Plaintiff's objections. (Doc. 162.) On August 21, 2026, NARS filed its response to Plaintiff's objections. (Doc. 163.)

## III. <u>Legal Standard</u>

After a magistrate judge issues a report and recommendation, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "To accept the report and recommendation of a magistrate [judge], to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." *Trs. of Drywall Tapers Loc. Union*

[2] Plaintiff's sur-reply was not separately docketed, but Magistrate Judge Stein appears to have considered the proposed sur-reply as part of the Report. (*See* Rep. 14.) In any event, Plaintiff did not object to Judge Stein's treatment of his proposed sur-reply.

*No. 1974 Benefit Funds v. Cite C Corp.*, No. 17-CV-9304, 2019 WL 1745743, at *1 (S.D.N.Y. Apr. 18, 2019) (internal quotation marks omitted). Where specific objections are made, the court is obligated to review the contested issues de novo. *See* Fed. R. Civ. P. 72(b)(3). However, when "the objecting party makes only conclusory or general objections, or simply reiterates the original arguments," the court will review the report only for clear error. *Jones v. Smith*, No. 09-CV-6497, 2012 WL 1592190, at *1 (S.D.N.Y. May 7, 2012) (collecting cases). "Moreover, parties may not raise new arguments for the first time in objections to a report and recommendation." *Erickson v. Jernigan Cap., Inc.*, 692 F. Supp. 3d 114, 120 (S.D.N.Y. 2023). , Further, "[i]f a party . . . simply relitigates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Antrobus v. N.Y.C. Dep't of Sanitation*, No. 11-CV-5434, 2016 WL 5390120, at * 1 (E.D.N.Y. Sept. 26, 2016); *see also Pena v. Rivera*, No. 05-CV-3109, 2006 WL 2529771, at *1 (S.D.N.Y. Aug. 31, 2006). Even when exercising de novo review, a "district court need not . . . specifically articulate its reasons for rejecting a party's objections or for adopting a magistrate judge's report and recommendation in its entirety." *Morris v. Loc. 804, Int'l Bhd. of Teamsters*, 167 F. App'x 230, 232 (2d Cir. 2006) (summary order).

Pro se complaints are afforded "special solicitude" and must be interpreted to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted). However, a pro se litigant is still "obligated to comply with the relevant rules of procedural and substantive law." *Doe v. Torres*, No. 05-CV-3388, 2006 WL 290480, at *3 (S.D.N.Y. Feb. 8, 2006). Accordingly, "where a pro se party's objections to a report and recommendation are 'conclusory or general,' or where a plaintiff 'simply reiterates his original arguments,' the report should be reviewed only for clear error."

*DeGrate v. Broad. Music, Inc.*, No. 12-CV-1700, 2013 WL 639146, at *2 (S.D.N.Y. Feb. 20, 2013) (quoting *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)).

## IV. **Discussion**

Magistrate Judge Stein issued the well-reasoned and comprehensive fifty-one page Report on July 31, 2026. Although the Report rejects the Defendants' standing arguments, (Rep. 17–22), it concludes that Plaintiff's substantive allegations cannot succeed because: (1) the tortious interference with contract claims fail to allege actual breach of contract or intentional procurement by Defendants of a third-party's breach of contract, (*id.* at 22–33); (2) the tortious interference with business relations claims do not plead that Defendants "acted for a wrongful purpose or used dishonest, unfair, or improper means," (*id.* at 33–37 (quoting *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008))); (3) the fraudulent misrepresentation allegations are deficient in that they relate to either "immeasurable and subjective" statements that are incapable of sustaining fraud allegations, (*id.* at 37–42 (quoting *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 60 (2d Cir. 2022))), or are statements of future intent that went unrealized and do not meet the pleading standards for fraud, (*id.* at 43–45); and (4) that the negligent hiring and supervision claims fail because Plaintiff admits that Grossman was acting within the scope of his employment, which is fatal to Brian Ng's negligent hiring and supervision claims, (*id.* at 46–48). Furthermore, because Brian Ng has already amended his complaint twice and further amendment would be futile, Magistrate Judge Stein recommends denying leave to amend. (*Id.* at 49–50.) I agree with each of Magistrate Judge Stein's recommendations.

Thus, the Report is ADOPTED in full, and Brian Ng's objections are OVERRULED.

### A. *Objections*

Brian Ng advances four principal objections. (Objs. 1–6.) I address each in turn below.

#### 1. First Objection

First, Plaintiff objects to Magistrate Judge Stein's finding that Matthew Ng did not breach his partnership agreement with Plaintiff. (Rep. 24–30.) In the first instance, the Report found that Plaintiff's tortious interference with contract claims failed because Plaintiff failed to allege two of the five elements of tortious interference with contract—(1) breach, (*id.* at 24–30), and (2) "intentional procurement" of breach, (*id.* at 30–33; *see also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (listing breach and intentional procurement of breach as two of the five elements of a tortious interference claim under New York law)). Plaintiff only objects to the Report's finding that breach of contract has not been plausibly alleged in the Third Amended Complaint, meaning that even if I were to agree with Plaintiff that the Third Amended Complaint plausibly alleges breach of the partnership agreement, (and I do not), then I would still adopt the Report because Plaintiff fails to allege intentional procurement of any such breach. This alone would merit overruling Plaintiff's First Objection. *See Packard v. City of New York*, No. 15-CV-7130, 2020 WL 1467127, at *4 (S.D.N.Y. Mar. 25, 2020) (where objection only goes to "dicta does [that] not undermine the Report's recommendation," the court "finds no reason to reject or modify the Report's proposed finding." (quoting *Severstal Wheeling, Inc. v. WPN Corp.*, No. 10-CV-954, 2014 WL 2959014, at *6 n.8 (S.D.N.Y. Apr. 11, 2014))).

However, I will address the merits of the First Objection. Plaintiff alleges that because "a third-party tortfeasor intentionally inject[ed] fraudulent data, fabricated reports and unreasonable delays," which "cause[d] a condition precedent to fail," that Matthew Ng breached the agreement. (Objs. 2–3.) This objection misses the mark. It may well be that when "a party to a

contract" "has frustrated or prevented the occurrence" of a condition precedent, he may not then turn around and "rely on the failure of another to perform [the] condition precedent" to vitiate the performance of the contract. *See Matec SLR v. Gramercy Holdings I, LLC*, No. 20-CV-4136, 2021 WL 1226956, at *3 (S.D.N.Y. Mar. 31, 2021) (quoting *Kooleraire Serv. & Installation Corp. v. Bd. of Ed. of New York*, 268 N.E.2d 782, 784 (N.Y. 1971)). Here, however, there are no allegations in the Third Amended Complaint that Matthew Ng, the only other party to the partnership agreement, (*see* Agreement), "frustrated or prevented" the occurrence of the condition precedent, only, at best, allegations that the Defendants frustrated the agreement in some way.[3] Defendants were not parties to the partnership agreement and thus they could not have breached the contract.[4] *See Blue Bus Tours, LLC v. Gore*, No. 20-CV-5879, 2025 WL 2816891, at *9 n.16 (E.D.N.Y. Oct. 3, 2025) ("A breach of contract action under New York law may only be maintained against a party to that contract." (internal quotation marks omitted)).

Like *Matec*, the other case cited by Plaintiff, *Hallmark Aviation Ltd. v. Awas Aviation Services, Inc.*, deals with a situation in which a "[d]efendant actively hindered the occurrence of the condition precedent" that was in an agreement it had signed, not one that a third party had signed. No. 12-CV-7688, 2013 WL 1809721, at *4 (S.D.N.Y. Apr. 30, 2013). Thus, there is no basis in the caselaw or the record to impute Defendants' purported conduct to Matthew Ng or

---

[3] I note that Matthew Ng is not named as a defendant in the Third Amended Complaint. (*But see* TAC *passim*.)

[4] Although, under some exceptional circumstances "an entity may be liable for a breach of the contract even where it is not a formal party or signatory to the contract," Brian Ng puts forward no argument here that the partnership agreement "was signed by the [Defendants'] agent, the contract was assigned to the [Defendants], or the signatory is in fact the 'alter ego' of the [Defendants]," nor could he plausibly put forward such an argument. *See Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 284 (S.D.N.Y. 2023) (quoting *Malmsteen v. Univ. Music. Grp., Inc.*, 940 F. Supp. 2d 123, 135 (S.D.N.Y. 2012)).

vice versa, which would be a necessary prerequisite to a finding that the so-called "doctrine of preemption" could apply. Therefore, Plaintiff's First Objection fails and is OVERRULED.

**2. Second Objection**

Next, Plaintiff argues that the Report erred in dismissing his tortious interference with business relations claims because Defendants "produced fabricated inspection and engineering reports" based on "conflicting assessments" from Defendants' inspectors and Defendants "knowingly submitted false representations to manipulate the process" of inspecting the Woodhaven Property, meaning that the Third Amended Complaint successfully pleads the "wrongful means" prong of the tortious interference with business relations test. (Objs. 3–4.) This objection misconstrues the law and is thus misplaced.

"The wrongful means requirement makes alleging and proving a tortious interference claim with business relations 'more demanding' than proving a tortious interference with contract claim." *Catskill Dev.*, 547 F.3d at 132 (quoting *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 449–50 (N.Y. 1980)). To prove wrongful means, a plaintiff must show "that the defendant's conduct amounted to a crime or an independent tort," or that "a defendant engage[d] in conduct for the sole purpose of inflicting intentional harm on plaintiffs." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (internal quotation marks omitted and alterations adopted).

As the Report correctly points out, Brian Ng does not show either that Defendants' conduct "amount[ed] to . . . an independent tort" or that their behavior was "engaged in . . . for the sole purpose of inflicting intentional harm on plaintiffs." (Rep. 33–37.) Because of the heightened standard that inures to tortious interference with prospective business relations claims, Plaintiff must "directly connect [allegations] to any independent tort, as opposed to

violations that would sound in breach of contract." *McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, No. 22-CV-1138, 2022 WL 18027555, at *8 (S.D.N.Y. Dec. 30, 2022). Analyzing Plaintiff's allegations in their strongest possible light, as I am obliged to do at this stage of the litigation, Plaintiff does not connect Defendants' actions to an independent tort rather than allegations that Defendants engaged in a "breach of the insurance contract" that they signed with Matthew Ng. (Rep. 36.) The appropriate mechanism to vindicate these rights would be for Matthew Ng to bring a breach of contract claim against Defendants, not for Brian Ng to bring a tortious interference of contract claim against the same parties.[5]

Plaintiff cites *Carvel Corp. v. Noonan* for the proposition that "'[w]rongful means include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure.'" 818 N.E.2d 1100, 1104 (N.Y. 2004) (quoting *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 449 (N.Y. 1980) (quoting Restatement (Second) of Torts] §§ 767–68)). However, Plaintiff misreads *Carvel.* In that case, the New York Court of Appeals concluded, in response to a certified question from the Second Circuit, that the franchise retailing program of Carvel, an ice cream distributor, could not support a jury verdict on tortious interference with prospective economic relations claims because such a program did "not amount to the sort of extreme and unfair economic pressure that might be wrongful." *Id.* at 192. The language quoted by Plaintiff is pulled directly from the Second Restatement of Torts to demonstrate the kinds of conduct that might be examples of predicate

---

[5] Indeed, as Magistrate Judge Stein explains in his Report, Matthew Ng, on September 22, 2025, "filed a separate action against [Amguard] seeking recovery under the insurance policy based on factual allegations substantially similar to those in the FAC." (Rep. 6 (citing *Matthew Ng. v. Amguard Insurance Company*, No. 25-CV-7855 (S.D.N.Y.)).) On March 6, 2026 Matthew Ng moved to voluntarily dismiss this case, (Doc. 26, No. 25-CV-7855), after Amguard had filed a motion to dismiss on November 14, 2025, (Doc. 9, No. 25-CV-7855). Magistrate Judge Stein issued a report & recommendation concerning that motion to dismiss on April 9, 2026, (Doc. 28, No. 25-CV-7855) and I adopted his recommendation that the case be dismissed on September 29, 2026, (Doc. 29, No. 25-CV-7855).

acts supporting a finding of an independent tort, but does not lay out the standard itself for what constitutes "wrongful means." *See Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 170 (S.D.N.Y. 2008) ("Pleading the presence of false statements alone is not enough to support a claim for tortious interference after *Carvel*. . . . [T]he false statements must constitute an independent crime or tort, be made solely out of malice, or amount to extreme and unfair economic pressure." (internal quotation marks omitted)), *aff'd*, 321 F. App'x 58 (2d Cir. 2009). As I explain *infra* § IV.A.3, the alleged misrepresentations made by Defendants and their agents are not independently actionable and, at the same time, "[t]he only specific act[s] alleged in the Complaint that could support the claim against [Defendants]" are these "allegedly false statements." *Berwick v. New World Network Int'l, Ltd.*, No. 06-CV-2641, 2007 WL 949767, at *14 (S.D.N.Y. Mar. 28, 2007). Finding, as I do, that these statements are not independently actionable, they do "not constitute the kind of 'wrongful means' that can form the basis for a tortious interference claim against a competitor." *Id.*[6]

Finally, it is evident that Defendants' actions were not designed "for the sole purpose of inflicting intentional harm on plaintiffs." *Cf. 16 Casa Duse*, 791 F.3d at 262. The law is clear that "[i]f the defendant is motivated by legitimate economic self-interest," he cannot be motivated by the sole purpose of inflicting harm on the plaintiffs. *Learning Annex Holdings, LLC v. Whitney Educ. Grp., Inc.*, 765 F. Supp. 2d 403, 412 (S.D.N.Y. 2011) (citing *Carvel*, 818

---

[6] Further, if the underlying "independent tort" Plaintiff's claims are bottomed on is rooted in the "negligent hiring, retention, and supervision" claims from Brian Ng's complaint, then I find that these claims fail as well for the reasons described in the Report, (Rep. 46–48), which have not been objected to and, therefore, which I have reviewed for clear error and affirm, finding none. *See Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record."); *Shukla v. Deloitte Consulting LLP*, No. 19-CV-10578, 2021 WL 3721349, at *3 (S.D.N.Y. Aug. 20, 2021) (concluding that a reviewing court need "respond only to 'those portions of the recommendations to which objection is made'" (quoting *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997))).

N.E.2d at 1104); *see also Hassan v. Deutsche Bank A.G.*, 515 F. Supp. 2d 426, 430 (S.D.N.Y. 2007) (same), *aff'd sub nom.*, 336 F. App'x 21 (2d Cir. 2009). "[W]ithout more specific allegations demonstrating an intent to harm [Plaintiff] out of spite or through wrongful means," Plaintiff fails to plausibly allege facts that support an inference that "[Defendants] acted solely to inflict intentional harm on" Plaintiff, *RBG Mgmt. Corp. v. Vill. Super Mkt., Inc.*, 692 F. Supp. 3d 135, 150 (S.D.N.Y. 2023), rather than, as the Report concludes, a rational and normal economic self-interest in "minimiz[ing] Defendants' payout on the insurance claim," (Rep. 34–35 (collecting cases where similar claims have been dismissed)). Plaintiff thus fails to meet the "high bar" of pleading "wrongful means." *See Bullion Trading LLC v. J.P. Morgan Chase Bank, N.A.*, No. 25-CV-05980, 2026 WL 1786445, at *7 (S.D.N.Y. June 22, 2026).

Plaintiff's Second Objection is OVERRULED.

**3. Third Objection**

Plaintiff's Third Objection concerns the Report's conclusion that his fraudulent misrepresentation claims must be dismissed. (Objs. 4–5.) In particular, Plaintiff objects to the findings that Grossman's claims were non-actionable puffery or statements of future intent. (*Id.* at 4.) Plaintiff asserts this is because the statements made by Grossman were "statement[s] of future intention made with a present intention not to perform." (*Id.*). Brian Ng also quibbles with the Report's reference to the "out-of-pocket" rule, which bars the recovery of "expected profits" for "claims of fraud and fraudulent inducement." (*See* Rep. 45 n. 9 (quoting *Virola v. XO Commc'ns, Inc.*, No. 05-CV-5056, 2008 WL 1766601, at *15 (E.D.N.Y. Apr. 15, 2008)).)

Taking the second of these grievances first, much like Plaintiff's First Objection, this does not go to the gravamen of any of Magistrate Judge Stein's dispositive findings and thus can be dismissed on this basis alone. *See supra* § IV.A.1 (quoting *Packard*, 2020 WL 1467127, at

*4). "It is axiomatic that to award damages, there must be liability." *Cappone v. Morrissey*, No. 16-CV-7170, 2018 WL 4055280, at *10 (E.D.N.Y. July 27, 2018), *report and recommendation adopted*, 2018 WL 4054871 (E.D.N.Y. Aug. 24, 2018). Here, Magistrate Judge Stein concluded that the Third Amended Complaint did not plausibly plead liability for fraudulent misrepresentations, so there can be no plausible claim for damages. Nonetheless, I note that Magistrate Judge Stein's legal conclusion, (Rep. 45 n. 9), that Plaintiff, if liability were adequately pled, (and it is not), is only entitled to "actual pecuniary loss, not lost profits or any benefit that the plaintiff expected to acquire but for the defendant's fraudulent conduct," is undeniably accurate, *see Vaughn v. Consumer Home Mortg. Co.*, 470 F. Supp. 2d 248, 269 (E.D.N.Y. 2007), *aff'd*, 297 F. App'x 23 (2d Cir. 2008).

The cases cited by Plaintiff do not help him. Rather, *Lama Holding Co. v. Smith Barney Inc.*, reiterated the out-of-pocket rule, explaining that "[d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained," and affirmed the district court's dismissal of fraud claims on this basis. 668 N.E.2d 1370, 1373 (N.Y. 1996). "Under this rule, the loss is computed by ascertaining the difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain," and "there can be no recovery of profits which would have been realized in the absence of fraud." *Id.* (internal quotation marks omitted). In *Community Association of the East Harlem Triangle v. Butts*, the plaintiffs pled that a "specific alternative offer for the property for $3 million more was made at around the same time as the [fraudulent] offer," which they would have accepted but for the fraud. 161 N.Y.S.3d 41, 44 (2d Dep't 2021). This ruling did not abrogate the out-of-pocket rule, but rather it concerned a case where the plaintiff pled damages that met the rule's parameters.

Here, Plaintiff only references the $200,000 capital commitment from Matthew Ng. (TAC ¶ 72.) However, the Agreement did not provide for Matthew Ng to pay Plaintiff $200,000, but instead for Matthew Ng to "provide initial contributions/funds" of $200,000 to the signatories' business venture. (TAC Ex. 7 at 2.) This alone does not provide a concrete value for the "difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain," as required by New York's out-of-pocket rule. *Lama*, 668 N.E.2d at 1373.

In any event, I agree with Magistrate Judge Stein that the Third Amended Complaint "contains no factual allegations suggesting that Grossman knew or believed two years earlier, when his representation was made, that his alleged promise was false." (Rep. 44.) This dooms Plaintiff's claims for fraudulent misrepresentation. "To state a claim for fraud or inducement under New York law, a party must allege material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages." *Transnat'l Mgmt. Sys. II, LLC v. Carcione*, No. 12-CV-2151, 2016 WL 7077040, at *5 (S.D.N.Y. Dec. 5, 2016) (citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009)). The specific representations challenged are that (1) "[i]f coverage is confirmed or afforded, [Grossman] will go ahead and prepare an estimate," (2) that Amguard would "indeed accept the NYC Department of Buildings findings," "if coverage is afforded," (3) that Grossman would "provide [Plaintiff] with a copy of everything," "[i]f coverage is confirmed or afforded," (4) and stating that hiring an independent adjuster would "only slow down the process." (TAC ¶¶ 41–45.) Plaintiff can allege no facts that would give rise to a plausible inference that these statements were known to be false when made.

Plaintiff does not dispute that these statements were "statement[s] of future intention." (Objs. 4–5.) Therefore, Plaintiff must adduce allegations to his complaint "showing that the promisor intended not to honor her obligations at the time she made the statement." *Stamelman v. Fleishman-Hillard, Inc.*, No. 02-CV-8318, 2003 WL 21782645, at *7 (S.D.N.Y. July 31, 2003) (quoting *SNCB Corporate Fin. Ltd. v. Schuster*, 877 F. Supp. 820, 826 (S.D.N.Y. 1994) (citing *Nat'l Westminster Bank v. Ross*, 130 B.R. 656, 664 (S.D.N.Y. 1991), *aff'd sub nom.*, 962 F.2d 1 (2d Cir. 1992))). The Third Amended Complaint contains no allegations that Grossman knew that the statements he made to Plaintiff in January of 2021 would not be honored when he made them, beyond the fact that Grossman never made an estimate and the estimate that was ultimately procured, in Matthew Ng's view, was not "fair and reasonable," meaning that the process did not turn out as the Plaintiff had hoped or expected. (*See* TAC Ex. 7.) However, a "defrauded party may not" show present intent not to perform, "simply by showing that the future event never occurred." *Rodgers-King v. Candy Digital Inc.*, No. 23-CV-2591, 2024 WL 382092, at *6 (S.D.N.Y. Feb. 1, 2024) (quoting *Stamelman*, 2003 WL 21782645, at *7).

This conclusion is buttressed by the fact that nearly all of Grossman's statements were conditional. Specifically, Grossman stated he would prepare an estimate "[i]f coverage is confirmed or afforded," (TAC ¶ 41), that "the insurance company will propose a settlement of the claim" "if coverage is afforded," (*id.* ¶ 42), that the company would "find a[n] estimate that is fair and reasonable," "if there is an estimate from the insured side," (*id.* ¶ 43), and that Amguard would "accept the NYC Department of Buildings findings including the violations," "if coverage is afforded," (*id.* ¶ 44). This is analogous to the fact pattern in *Karakus v. Wells Fargo Bank*, where the court dismissed fraud claims against Wells Fargo when the bank's agent represented to a potential loan recipient that he "could afford the monthly loan payments because home prices

were rising continually" and encouraged the plaintiff not to "worry about employment." 941 F. Supp. 2d 318, 344 (E.D.N.Y. 2013) (internal quotation marks omitted), *adhered to on denial of reconsideration*, 2013 WL 3187055 (E.D.N.Y. June 20, 2013). Defendant's agent in that case had also stated that "as long as your credit is good, I'll help you." *Id.* Because plaintiff alleged no facts suggesting that the defendant "ever *intended* for housing prices to drop, or *intended not* to assist the [plaintiff] in refinancing their home again in the future, should their credit remain strong," there was no actionable fraud. *Id.* (emphasis in original). Here, Grossman's statements follow a similar pattern. There is no indication that Grossman knew about the intervening and superseding events that would come to pass, including the purported need for additional inspections of the neighbor's property, and the other forthcoming impediments to the inspection process. (*But see* TAC ¶¶ 46–60.) Absent such an indication, there can be no finding that Grossman "never intended to honor the promise," that he made. *Pope v. N.Y. Prop. Ins. Underwriting Ass'n.*, 489 N.E.2d 427, 247 (N.Y. 1985); *see also Passiglia v. Northwell Health, Inc.*, 252 F. Supp. 3d 129, 138 (E.D.N.Y. 2017) (dismissing claims where "the amended complaint is devoid of any facts from which it may reasonably be inferred that" defendant's agent did not intend to follow through on statement of future intent). Consequently, I find no allegations in the Third Amended Complaint of present intent not to perform future promises regarding Grossman's representations and these claims consequently cannot survive a motion to dismiss.

Finally, the Report is correct that some of Grossman's statements, such as that hiring an independent investigator would "only slow the process down," (*id.* ¶ 45), are, without a doubt, "subjective statements of opinion which cannot be proven false" that I must "treat [] as non-actionable puffery as a matter of law." *Int'l Code Council*, 43 F.4th at 60. Here, like in

*Karakaus*, cajoling a plaintiff not to "worry about employment" or "worry about numbers" may be misguided "counsel[]," but, in and of itself, does not constitute an objective misrepresentation. 941 F. Supp. 2d at 344–45. Here, Plaintiff does not plead any contrary facts in the Third Amended Complaint, i.e., that hiring an independent inspector would not, in actuality, slow down the process, much less that Grossman had actual knowledge that hiring an independent inspector would speed up the process as a matter of fact. Therefore, the Report is correct to conclude that Grossman's statements related to hiring an independent contractor are also not actionable.

Based on the foregoing reasoning, Plaintiff's Third Objection is OVERRULED, and Defendants' motions are GRANTED.

**4. Fourth Objection – Leave to Amend**

Finally, Brian Ng objects to the Report's finding that leave to amend should be denied in this case. (Objs. 6.) Although courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading . . . gives any indication that a valid claim might be stated," *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000), "if the proposed amendment would still not state a claim, so that the amendment would be futile," then leave to amend need not be granted, *Medina v. Tremor Video, Inc.*, 640 F. App'x 45, 47 (2d Cir. 2016) (summary order) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 50 (2d Cir. 1991). Here, I agree with Magistrate Judge Stein that no amended pleading could cure the deficiencies identified in the Report. (Rep. 49–50.) "The problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it." *Cuoco,* 222 F.3d at 112. The deficiencies, for example, that the Report identifies with regard to Plaintiff's fraudulent misrepresentation allegations, are not a result of inartful drafting. The statements are what they are, and what they

are is not verifiably fraudulent. Thus, "[r]epleading would thus be futile. Such a futile request to replead should be denied." *Id.*

Furthermore, Plaintiff has already amended his complaint twice, (*see* Doc. 20, SAC), and, earlier in the case, I dismissed Plaintiff's complaint without prejudice, (Doc. 19). Plaintiff has already had multiple opportunities to salvage his complaint and has failed to do so. Thus, I conclude that, in this case, where "Plaintiff has already amended the Complaint twice, [] granting Plaintiff further leave to amend would be futile." *Jean-Baptiste v. Almonte Stream Food Corp.*, No. 23-CV-1384, 2023 WL 2587668, at *2 (E.D.N.Y. Mar. 21, 2023), *aff'd*, No. 23-438, 2023 WL 7293777 (2d Cir. Nov. 6, 2023). Plaintiff's Fourth Objection is OVERRULED.

## V. **Conclusion**

I hereby ADOPT Magistrate Judge Stein's Report & Recommendation in full, and OVERRULE Plaintiff's objections. Defendants' motions are hereby GRANTED. The Clerk of Court is respectfully directed to terminate this case and close all pending motions.

SO ORDERED.

Dated: September 30, 2026
New York, New York

Vernon S. Broderick
United States District Judge